224          KENTUCKY REPORTS.          [VOL. 85

Shelby's Adm'r v. Cincinnati, New Orleans & Texas Pacific R. R. Co.

CASE 32—PETITION ORDINARY—FEBRUARY 19.

# Shelby's Adm'r v. Cincinnati, New Orleans & Texas Pacific R. R. Co.

### APPEAL FROM BOYLE CIRCUIT COURT.

1. RAILROADS—NEGLIGENCE.—It is the duty of the engineer in charge of a train moving, or about to move, to give timely warning of its approach to a crossing or other place where the public have a right to go; and it is no less his duty to use all necessary means consistent with the safety of those on the train to prevent injury to a person on the track in front of a train after his peril is discovered; and this duty the company owes even to a trespasser on the track, who may recover for an injury wantonly or intentionally inflicted on him.

2. SAME.—A detached car having been set in rapid motion on a down grade, it was as much the duty of some servant of the company to be in a position to give warning of its approach, and to control its movements, as if it had been attached to a train or an engine.

3. SAME.—Increased vigilance and precaution to prevent injury is required of those in charge of trains moving in or through a city or town.

4. SAME.—The fact that pedestrians, by license or custom, travel upon a railroad track at a particular place makes it the duty of the servants of the company to exercise greater caution and prudence in the operation of its road at that place, whatever may be the *extent* of the duty which the company owes to such persons, and neither a train nor a single car should be moved at such a place without some servant in a position to give warning of its approach and control its movement.

5. SAME.—One who was upon a side-track, seeking employment from a shipper of stock to feed and water his stock, was there upon business indirectly connected with the operation of the road, and having a right to be there, the company owed him a duty of *active* vigilance.

6. PEREMPTORY INSTRUCTION.—As the evidence introduced by plaintiff made out a *prima facie* case, it was error to give a peremptory instruction to find for defendant.

ROBERT HARDING, J. B. McFERRAN AND VAN WINKLE & RODES FOR APPELLANT.

1. The question as to the degree of the negligence was for the jury and not the court to determine. (L., C. & and L. R. R. Co. v. Mahoney's Adm'r, 7 Bush, 237.)

2. Under the circumstances appellant's intestate was not guilty of contributory negligence in going upon the side-track.

3. If the negligence of the defendant was willful, the contributory negligence of plaintiff, if any, is not a defense to the action. (7 Bush, 239.)

4. Even though the negligence was not willful, contributory negligence can not be relied on as a defense if the accident might still have been prevented by the exercise of proper care upon the part of defendant. (L. & N. R. R. Co. v. Yandell, 17 B. M., 598; L. & N. R. R. Co. v. Collins, 2 Duv., 116; L. & N. R. R. Co. v. Robinson, 4 Bush, 509; Jacobs' Adm'r v. L. & N. R. R. Co., 10 Bush, 273; L., C. & L. R. R. Co. v. Sullivan, 5 Ky. Law Rep., 722; Pennsylvania Co. v. Maloney's Adm'r, 5 Ky. Law Rep., 859; Bronson's Adm'r v. Labrot & Graham, 5 Ky. Law Rep., 830, 831; L. & N. R. R. Co. v. McCoy, 5 Ky. Law Rep., 406; Wharton on Negligence, vol. 1, secs. 326, 329, 335, 336, 338, 348 and 388.)

5. The defendant was guilty of willful negligence in running the detached car on the side-track at such a rate of speed without any one in charge of it.

DURHAM & JACOBS for appellee.

As appellant's intestate was a trespasser on appellee's track, and appellee had no notice of his presence there it owed him no duty, and this action can, therefore, not be maintained. No cause of action arises without a breach of duty, and in the absence of notice to appellee that the boy was on the track, the fact that he was a child of tender years is not material. (Ky. Cen. R. R. Co. v. Gastineau's Adm'r, 7 Ky. Law Rep., 4; Thompson on Negligence, vol. 2, p. 1183, note 8.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

This is an action by appellant to recover for the destruction of the life of his intestate, George Shelby, a boy about nine years of age, by the alleged willful negligence of the servants and agents of the appellee. And the question before us is, whether the lower court erred in giving, at the conclusion of the plaintiff's evidence, a peremptory instruction to find for the defendant.

The intestate was killed by being run over by a box-car, on a side-track of appellee's railroad, at Junction City, in Boyle county, where the Louis-

ville and Knoxville road, running east and west, crosses it. It appears that, on the occasion, those in charge of a freight train standing on the main track of appellee's road, were endeavoring to detach the box-car in question, which was next to the engine, for the purpose of placing it on the side-track near the depot; and with that view it was drawn along the main track to the intersection, and thence pushed upon the side-track. But instead of keeping it attached to the engine until it reached the place where it was the purpose to leave it, the engine, after being made to give it an impetus, was cut loose at a point about seventy-five yards from where the intestate was standing, and carried back in the opposite direction, towards the main track, while the box-car was permitted to move without the control of any one along the side-track, that was down grade, at the rate of from five to eight miles an hour, going a distance of two hundred yards after running over the intestate before it stopped.

No signal or warning was given of the approach of the car to where the intestate was killed, nor does it appear that any servant of appellee was in a position to see or warn him, or any one else who might have been on the side-track in front of the moving car, which the evidence shows did not itself make enough noise to attract attention.

It appears that Junction City contains a population of about four hundred, and about twenty families reside south of the Louisville and Knoxville road, who have been accustomed to pass along the side-track of appellee's road, going to the part of the town north of the other road.

It further appears that, a few hours before his death, the intestate had been employed by the owner to water hogs in a box-car of another freight train. And his purpose in going where he was when killed was to solicit employment by the same person in watering cattle in a car of the train from which the box-car in question was detached; and when struck, he was standing on the side-track opposite the cattle-car, waiting for the owner, who was at it, to become disengaged.

The right to maintain an action against a railroad company for an injury to the person always involves a breach of duty by the company or its servants, and its liability generally depends upon the place where, and the circumstances under which, the injury is done, and the situation and relation of the parties at the time. But there are certain well established rules which regard for human life will not allow to be relaxed.

It is the duty of the engineer in charge of a train moving, or about to move, to give timely warning of its approach to a crossing or other place where the public have a right to go. And it is no less his duty to use all necessary means consistent with the safety of those on the train to prevent injury to a person on the track in front of a train after his peril is discovered. And this duty the company owes even to a trespasser on its track. For while, as a general rule, he is required to use his eyes and ears to discover the approach of trains, he may nevertheless recover for an injury wantonly or intentionally inflicted on him.

And increased vigilance and precaution to prevent
injury is required of those in charge of trains
moving in or through a city or town. But it is
obvious that neither the duty of giving the warn-
ing of the approach of trains, nor of resorting to the
proper and necessary means to prevent collision
with persons, can be performed unless there be some
one in a position to see ahead of the train and to
control it.

Though in this case the injury was done not by
a train drawn or moved by the engine, but by a
single detached car, nevertheless it seems to us
that it was as much the duty of some servant of
appellee to be in a position to give warning of
its approach, and to control its movement, as if it
had been attached to a train; for its movement on
the down grade was not only rapid, but without
noise sufficient to attract attention.

As held by this court in Kentucky Central R. R.
Co. v. Gastineau's Adm'r, 83 Ky., 119, a railroad com-
pany is not required to anticipate the peril of a
person who intrudes into its private yard; and
undoubtedly a company may, without a breach of
its duty to the public, move a single detached car
by bumping or pushing, or suffer it to move by
gravitation to a desired position on that part of
its track at a depot or station where the public
have no right to go. But in this case the car was
allowed to move without control at a rapid rate of
speed a distance of near three hundred yards in a
town; and along a considerable portion of the track
where it ran persons were in the habit of passing

by the tacit permission, if not express license, of the company.

There is some conflict of authority as to the extent of duty which a railroad company owes to pedestrians who, by license or custom, use its track to travel on. But unquestionably such fact should enhance the duty of the servants of the company to exercise caution and prudence in the operation of its road at such place. (Thompson on Negligence, vol. 1, 453.) And in our opinion, the full performance of duty requires that neither a train or single car should be moved at such place without some servant is in a position to give warning of its approach and control its movement.

The intestate, however, was not at the time he was killed using the track for travel from one part of the town to the other; but he was there upon business legitimately connected, at least indirectly, with the operation of the road, the performance of which the company must be presumed to assent to. For in transporting animals on a railroad it is necessary and customary for the owners to employ others than the servants of the company to feed and water them at stations and stopping places. He had some time before his death been so employed, and at the time of his death was seeking the same employment.

In our opinion, therefore, he had a lawful right to go upon the track at that place, and the company owed to him a duty of active vigilance.

It is true he was upon the side-track near the rail next to the main track, and might have taken

a safe position between the tracks while waiting to speak to the owner of the cattle. But when he went there the side-track was open, and no notice or warning was given that the box-car was about to be put upon the side-track, the first notice given to him being when the car struck him.

In our opinion, the evidence introduced by the plaintiff made out a *prima facie* case, and the court erred in giving the peremptory instruction.

Wherefore the judgment is reversed, and the cause remanded for a new trial consistent with this opinion.