Case 73.—ACTION   BY  R.  E.  GODDARD  AGAINST  THE
SOUTHERN RY. IN KY FOR DAMAGES FOR PERSONAL
INJURIES.—November 29.

### Southern Ry. in Ky. v. Goddard.

Appeal from Mercer Circuit Court.

W. C. BELL, Circuit Judge.

Judgment for plaintiff.   Defendant appeals.   Re-
versed.

1. Railroads—Injuries to Persons About Cars—Rights of Shipper—
   Where a contract for the shipment of horses made it the duty
   of the shipper to load the horses on the car, and a chute
   was erected for that purpose, the act of the shipper in going
   upon the railroad's track and around the car at other places.
   than where the chute was erected, in seeing to the loading
   of the horses and their harness, did not render him a tres-
   passer, nor constitute negligence per se.
2. Same—Contributory Negligence—A shipper, engaged in load-
   ing horses on a car, is bound, in going about the premises of
   the railroad, to use ordinary care for his own safety, but
   need not anticipate danger.
3. Same—Negligence of Railroad—Where a railroad maintains a
   ditch on its premises, about or near which a shipper, who
   has no knowledge of its presence, might have occasion to go
   in laoding his stock at night, and negligently fails to guard
   the ditch with a barrier or provide signal lights to prevent
   persons from falling therein, it is liable for damages to a.
   shipper who is injured thereby.
4. Same—A railroad, which maintains a ditch on its premises at.
   a place where a shipper is entitled to go, which ditch is.
   dangerous when concealed by the darkness, because not
   guarded with a railing, should notify the shipper of the dan-
   ger.
5. Trial—Direction of Verdict—When Proper—A peremptory in-
   struction for defendant is only proper when, after admitting
   every fact proven by plaintiff's evidence to be true, as well
   as all reasonable inferences that can be drawn therefrom,
   plaintiff has failed to establish his case.

6. Railroads—Loading of Live Stock—Injury to Shipper—Contributory Negligence—Whether a shipper, who was injured by falling in an unguarded ditch on the railroad's premises while going about the premises in loading horses on a car in the nighttime, was guilty of contributory negligence, Held— Under the evidence, a question for the jury.

7. Same—Negligence of Railroad—Whether the ditch made the railroad's premises dangerous, and whether the railroad was guilty of negligence in failing to guard it with a railing or other contrivance, Held—Under the evidence, a question for the jury.

8. Witnesses—Contradiction—Party's Own Witness—Under Civil Code Prac., sec. 596, providing that the party producing a witness may contradict him by other evidence, plaintiff may contradict testimony of his own witness, brought out by defendant's counsel on cross-examination and to plaintiff's surprise.

9. Damages—Exemplary Damages—Question for Court—Whether there is any evidence in a given case to justify the assessment by the jury of exemplary damages is a question for the determination of the court.

10. Same—Right to Exemplary Damages——A shipper, who was injured while engaged in loading horses upon a car by falling into an unguarded ditch on the railroad's premises, was entitled to recover only actual damages, and could not recover exemplary damages.

11. Same—Personal Injuries—Measure of Damages—Compensatory damages for personal injuries is such as will reasonably and fairly compensate the injured person for his mental and physical suffering, the necessary and reasonable expense of medical bills incurred by him, and the permanent impairment of his ability to earn money, so far as they are directly caused by the negligent acts complained of.

E. H. GAITHER and HUMPHREY, HINES & HUMPHREY for appellant.

### POINTS AND AUTHORITIES.

1. The court should have instructed the jury to find for the defendant.

(a.) The fact that the stock chute, stock pens and adjacent track had been in use for twenty years and no accident had happened demonstrates that there was no negligence in their construction. (Laflin v. B. & S. W. R. R. Co., 106 N. Y., 136; 12 N. E., 599; Dougan v. Champlain Transp. Co, 56 N. Y., 1; Loftus v. Union

Southern Ry. in Ky. v. Goddard.

Ferry Co., 84 N. Y., 455; Burke v. Witherbee, 98 N. Y., 562; Illinois Central R. R. v. Hobbs, 58 Ill. App., 130; Crocheron v. N. S. Ferry Co., 56 N. Y., 656.)

(b.) The plaintiff, in wandering around premises unknown to him, on a dark night, without carrying a light, was guilty of such contributory negligence as prevents his recovery.   (1 Lackat v. Lutz, 94 Ky., 287; Louisvile & Nashville R. R. Co. v. Ricketts, 93 Ky., 116; 96 Ky., 46; Emery v. C. M. & St. P. Ry., 77 Minn., 465; 80 N. W., 627; Bradley v. Grand Trunk Ry., 107 Mich., 243; 65 N. W., 102; M. K. & T. Ry. Co. v. Turley, 85 F. R., 370; Reed v. Richmond & A. R R Co,, 84 Va, 231 (S. C., 4 S. E., 587); Bennett v. N. Y., N. H. & H. R. R., 57 Conn., 422 (S. C. 18 Atl. Rep., 668); Parker v. Portland Pub. Co., 69 Maine, 173.

2. The evidence did not justify an instruction allowing punitive damages.   (McHenry Coal Co. v. Sneddin, 98 Ky., 684; Milwaukee Ry. v. Arms, 91 U. S., 495; Crosby v. Bradley, 11 Ky. Law Rep., 954 (Superior Court); L. & N. R. R. v. Jackson, 18 Ky. Law Rep., 296; K. C. Ry. v. Biddle, 17 Ky. Law Rep., 1363.)

3. The form of the instruction is prejudicial.   (Southern Railway v. Barr's Adm'x, 21 Ky. Law Rep., 1615.)

4. No instruction should have been given for medical expenses. (Doe v. Perkins, 8 B. M., 201; Shultz v. Morrison, 3 Met., 98.)

J. T. WILSON for appellee.

J. F. VANARSDALL of counsel.


### SYNOPSIS OF BRIEF AND AUTHORITIES.

1. At the time of receiving his injuries appellee was on the premises of the appellant by invitation, not as guest, but as customer, for the mutual interest and advantage of both, and appellant owed to him a duty of active vigilance. (Shelby's Adm'r v. C., N. O. & T. P. Ry. Co, 85 Ky., 224; Harp v. Cumb. Telephone & Telegraph Co., 80 S W, 511; Wharton's Negl. secs. 349-352; Indermauer v. Dames, L. R., 1st C. P., 274, 2 C. P., 311; Brosnan v. Sweetser, 127 Ind., 1; Jaggard on Torts, yol. 2, p. 894, foot note 364; Hendricken v. Meadows, 154 Mass., 599; Gordon v. Cummins, 152 Mass., 513; Clop v. Mear, 134 Pa. St., 203; Fred v. Cameron, 4 Rich. Law, 228; O'Callaghan v. Bode, 84 Cal., 489; Campbell v. Portland Sugar Co., 62 Me., 552; Ray's Negl. Imposed Duties, p. 236; Ill. Cent. R. Co. v. Foley, 53 Fed. Rep., 459; Bennett v. L. & N. R. Co., 102 U. S., 577-586; R. R. Co. v. Hanning, 15 Wall., 649; Sweeney v. R. R. Co., 10 Allen, 368; Carlton v. Iron & Steel Co., 99 Mass., 216; Cooley on Torts,

secs. 604-607; Corby v. Hill, 4 C. B. (N. S.), 562; Chapman v. Roth-well, 1 El. B. & E., 168; Parnaby v. Lancaster Canal Co., 11 Ad. & El., 230; Gibbs v. Trustee Liverpool Docks, 3 H. & N., 164; Union Pacific R. R. Co. v. McDonald, 152 U. S., 262.)

2. The duty to load the stock, imposed upon appellee by his contract, required him to see that the doors of the car were properly secured, and gave him the right of access to all the premises necessary for that purpose and the proper loading of the stock. (Shelby's Adm'r v. C., N. O. & T. P. R. Co., 85 Ky., 224; Ray's Negl. Imposed Duties, p. 235; Newby v. Chicago, R. I. & P. R. Co., 19 Mo. App., 391.)

3. Though not a servant of the company in the strict sense, appellee was obligated to load the stock, and it was, therefore, the duty of appellant to exercise reasonable care to furnish to appellee a reasonably safe place to do this work. (Harp v. Cumb. Telephone and Telegraph Co., 80 S. W., 511; Choctaw, O. & G. R. Co. v. McDade, 191 U S., 65, 48 L. Ed., 96; Texas and Pacific R. Co. v. Archibald, 170 U. S., 665)

4. Appellee being wholly unacquainted with the premises, he had a right to presume, under the circumstancs of this case, that the premises furnished were reasonably safe. (Harp v. Cumb. Telephone and Telegraph Co., supra; Brosnan v. Sweetser, 127 Ind., 1.)

5. It was proper to show, in rebuttal, that appellee did not receive notice of the dangerous condition of the premises which witness, McGarvey, pretends to have given him. (Am. & Eng. Eng., vol. 29, p. 812; Gray, 3 Litt., 469.)

(a) Damages not excessive. Cases compared. (M. & L. R. R. Co. v. Herrick, 13 Bush, 127; L. & N. R. R. Co. v. Moore, 83 Ky., 675; L. & N. R. R. Co. v. Mitchell, 87 Ky., 527; Cogswell v. Railway Co., 5 Wash., 46; Galveston H. & S. A. R. Co. v. Wesch, 21 S. W., 313; Morgan v Sou. Pac. R. Co., 95 Cal., 501; Haynes v. Erk, 6 Ind. App., 332, 33 N. E., 637; Town of Fowler v. Linquist (Ind Sup.), 37 N. E., 133; Balzer v. Chicago M. & N. Co., 89 Wis., 257; Flanders v. St. P. M. & O. R. Co., 51 Minn., 193; Ehrmann v. Railroad Co., 131 N. Y., 576.)

6. Under the pleadings in this case appellant is precluded from raising the question of trespass. In the second paragraph of the answer the appellant pleads that appellee was on its premises by permission, and after verdict the pleadings must be construed, if by reasonable intendment it can be done, to sustain the verdict. (Covington v. Powell, 2 Met., 230; Commonwealth v. Cook, 8 Bush, 222; Kent v. Deposit Bank, Owensboro, 91 Ky., 70; Bogenschutz v. Smith, 10 Ky. Law Rep., 330; Nesbitt v. Whaley, 10 Ky. Law Rep., 400; Belnapp v. Clark, 10 Ky. Law Rep. 872; Rich v. Sweetman, 15 Ky. Law Rep., 602; Lumber Co. v. Cox, 14 Ky. Law Rep., 143.)

7. If appellee, at the time of his injury, was on the premises of appellant as licensee by the express permission of appellant, it is still liable to him for ordinary negligence. (Jaggard on Torts, 2d vol., chap. 12, p. 892; Bolch v. Smith, 7 Hurl. & N., 736; Southcote v. Stanley, 1 Hurl. & N., 247; Farrant v. Barnes, 11 C. B. (N. S.), 553.)

OPINION BY JUDGE SETTLE—Reversing.

Appellee, R. E. Goddard, a trader in saddle and harness horses, together with two other stockmen, James and McGarvey, desiring to ship by rail, for exhibition at the State Fair in the city of Owensboro, a number of high grade horses, procured of appellant, Southern Railway Company in Kentucky, a palace stock car for that purpose. The car was left by appellant on a side track in its depot yard, at Harrodsburg, and at its stock pen and chute provided for loading stock on its cars. Under the stock chute, and on appellant's right of way, is a ditch, about eight feet in width and five in depth, which extends east of the chute 100 feet. On the south side of the ditch, and about three and one-half feet from the track on which the stock car was standing, is a perpendicular stone wall, from five to six feet in height, erected by appellant to protect the roadbed bordering on the ditch from landslides; the top of this stone wall being on a level with the roadbed. In addition to the horses to be shipped by appellee, James and McGarvey to Owensboro, they had harness, sulkies and other paraphernalia, to be carried on the same car. After loading the horses appellee discovered that there was not room in the car for one of his sulkies. For the purpose of ascertaining whether there was room for it on the platform at the end of the car, he went from the stock chute to inspect the platform of the car. This he did by climbing over the railing of the chute

and going down a short flight of steps, attached to
the side of the chute and connecting with the road-
bed below, on the south side of the ditch, by the side
of the car containing the horses.  Upon reaching the
ground appellee walked to the platform of the car,
and, finding no room there for the sulky, went on
around the car to see if its south door was securely
fastened, and in attempting to return by the same
route to the steps at the stock chute he fell into the
ditch, thereby receiving a deep cut in the head and
fracture of the bones of one shoulder; the fracture
causing the use of the shoulder and arm to become
permanently impaired.  Appellee's injuries were re-
ceived September 17, 1903, at night; it being quite
dark and raining at the time.  For the injuries thus
sustained he sued appellant in the lower court and
recovered a verdict and judgment for $5,200 in dam-
ages.  It appears from the allegations of the petition
that appellee's claim to damages rests upon the the-
ory that he had not, before the accident, been upon
appellee's premises; that the existence of the ditch
and the danger from walking near it in the dark were
unknown to him, and could not, by reasonable dili-
gence, have been discovered by him before he fell
into same; and that his injuries were caused by the
negligence of appellant in failing to provide the south
wall of the ditch with a railing or other contrivance
to prevent shippers of stock and others having busi-
ness on its premises from falling therein.  The an-
swer of appellant contained a traverse, and averred
contributory negligence on the part of appellee, and
the latter plea was controverted by reply.

The appellant did not introduce any evidence, and
its counsel insists that that of appellee entitled it to
the peremptory instruction asked of the trial court;

that is, it is argued that the evidence failed to show
any negligence on the part of appellant, but did show
that appellee's injuries resulted from his own negli-
gence. This contention is based upon the idea that
the ditch had existed for more than twenty years in
the condition it presented when appellee was injured,
that no other person had fallen in or been injured by
it, that there was no necessity for appellee's leaving
the stock chute and going near the ditch at the time
he was injured, and that he was negligent in doing
so and especially in attempting to walk around the
car and return to the stock chute without a light. It
is also argued for appellant that appellee, in going
upon appellant's premises where the car was stand-
in, became a trespasser; but we can not accept this
conclusion. Under the contractural relations existing
between appellant and appellee the latter had the
right to go upon the former's premises to load his
horses in the car furnished him for that purpose. In-
deed, it may be said he was invited to do so as a cus-
tomer of appellant. It can not, however, be assumed
that, because the chute had been erected for the pur-
pose of loading stock on the cars, it was negligence
per se for appellee to approach the car for any other
purpose than the loading of the horses by leading
them through the chute into it.

It is conceded that it was the duty of appellee and
his fellow shippers to load their own stock on the car,
and that they did so without assistance from any of
appellant's servants. But the loading was not com-
plete until the vehicles and trappings of the shippers
were also placed in or about the car, the horses hal-
tered in their proper places, the doors of the car se-
curely fastened, and its other openings closed to pro-
tect the horses from drafts, or so adjusted as to give

them necessary ventilation.  All these duties had to be attended to by the shipper before the car started for its destination, and, if any of them could not be performed by appellee without approaching the car on the ground from the outside, he had the right to perform them in that way; and, in the absence of knowledge on his part of the condition of the premises, he also had the right to assume that they were reasonably safe for such use.  But in such performance of his duties it was incumbent on him to use ordinary care for his own safety.  He was not required to anticipate danger, but only to exercise the care that a person of ordinary prudent habits would have exercised under the same circumstances.  Upon the other hand, a common carrier, like the appellant, is required to furnish shippers of stock over its road reasonably safe premises for loading same on the cars; and as stock is loaded for shipment at night, as well as by day, if a ditch is maintained on the premises by the carrier, about or near which a shipper, without knowledge of its presence, would have occasion to go in loading his stock on the cars at night, and by reason of the darkness he falls therein and is injured, the carrier should, we think, be held liable to him in damages, if guilty of negligence in failing to guard the ditch with a barrier or provide signal lights to prevent persons from falling therein.

As before stated, appellee was not upon appellant's premises as a trespasser or licensee, but by invitation as a customer of appellant.  The relation between him and appellant was, therefore, one of mutual advantage and common interest.  The distinction between invitation and license is stated in Wharton on Negligence (book 1, sec. 349), as follows: "The principle appears to be that invitation is inferred where there

is a common interest or mutual advantage, while li-
cense is inferred where the object is the mere pleas-
ure or benefit of the person using it.''   As to the de-
gree of care required of one who invites another to
come upon his premises, Judge Cooley, in his work
on Torts (604-607), says: ''When one expressly or by
invitation invites others to come upon his premises,
whether for business or any other purpose, it is his
duty to be reasonably sure that he is not inviting them
into 'danger, and to that end he must exercise ordi-
nary care and prudence to render the premises rea-
sonably safe for the visit.''   In Bennett v. L. & N. R.
R. Co., 102 U. S., 577, 26 L. Ed., 235, Mr. Justice Har-
lan reviewed the leading English and American au-
thorities on the question here involved, with the con-
clusion that they are in thorough accord.   From the
authorities referred to this rule is announced: ''The
owner or occupant of land, who, by invitation, ex-
press or implied, induces others to come upon his
premises for any lawful purpose, is liable in damages
to such persons, they using due care, for injuries oc-
casioned by the unsafe condition of the land or its
approaches, if such condition was known to him, and
not to them, and was negligently suffered to exist
without timely notice to the public, or to those who
were likely to act upon such invitation.''   This court,
in the case of Shelby's Adm'r v. C., N. O. & T. P. R. R.
Co., 85 Ky., 224, 8 Ky. Law Rep., 928, 3 S. W., 157,
seems to have fully concurred in the doctrine an-
nounced by the authorities supra.

  In the case at bar appellee had no assistance from ap-
pellant's servants, none of them were about for him
to command, and he and his fellow shippers had
everything to do in loading the stock and preparing
the car for its journey.   Obviously, appellant should

have furnishel appellee with reasonably safe premises for this purpose; and if the ditch thereon was dangerous, because concealed by the darkness and not guarded with a railing for the protection of persons entitled, as was appellee, to go upon the premises in the nighttime, it should have notified him of the danger, that he might have avoided it. It was averred in the petition, and proved by appellee without contradiction, that he had never been at appellant's stock pen or on the adjacent premises before, and that he had never seen and did not know of the existence of the ditch. It also conclusively appears from the evidence that appellee received no notice or warning from appellant of the existence of the ditch, though two of its servants set the car at the chute that night for the use of appellee and his fellow shippers, and left, knowing that the stock, vehicles, etc., would immediately be loaded.

It is contended by counsel for appellant that appellee's negligence was establishel by the fact that he went upon the ground and around the car without a light, though he had a lantern in the car, which he might have carried with him, and, furthermore, that in leaving the chute to go to the car he was warned by a fellow shipper, McGarvey, of the danger of doing so. We have already said that in going upon the ground and about the car it was the duty of appellee to use ordinary care for his own safety, and if he failed to do so, and by reason thereof received the injuries complained of, he can not recover, although appellant may have been negligent in failing to provide the ditch with a railing or in failing to warn him of its presence. It is true that there was some testimony that tended to prove appellee guilty of contributory negligence, such as his failing to provide him-

self with a light and the statement of McGarvey that he warned him of the danger. McGarvey called to appellee from the car. His statement was: "I hallooed to him to be careful; that there was a dangerous place down there." He did not, however, claim to have told appellee of the ditch, or what the danger was. Appellee testified that the lantern could not be taken from the car, because it was needed to enable James, McGarvey and appellee's servant, Jenkins, to secure the horses in their places, and store the vehicles and trappings that had to be shipped in the car, and he flatly denied that he received any warning of danger from McGarvey. James, who stood between McGarvey and the appellee at the time the former said he gave the warning, testified that he (James) did not hear the warning. The facts relied on by appellant as showing negligence on the part of appellee were not so conclusive as to justify a peremptory instruction. "'A peremptory instruction is only proper when, after admitting every fact proven by plaintiff's evidence to be true, as well as all reasonable inferences that can be drawn therefrom, the plaintiff has failed to establish his case." (Miller v. Metropolitan Life Ins. Co., 89 S. W., 183, 28 Ky. Law Rep., 223.)

As to his conduct on the occasion in controversy, appellee further testified, in substance, that in going from the chute to the roadbed and along the way between the track and the ditch, as well as in returning, he exercised the greatest care possible, both because of his ignorance of the premises and the darkness of the night. When he thought he had gotten back to the steps, he felt for them with his foot. Failing to find them, he took another step, and fell in the ditch. We think the question of whether he was guilty of

negligence and whether it contributed to his injuries to such an extent that, but for such negligence, they would not have been received, was properly left to the decision of the jury by the court, as also were the questions of whether the existence of the ditch made the appellant's premises dangerous at night, and whether appellant was guilty of negligence in failing to guard it with a railing or other contrivance, to prevent injury to appellee and others entitled to go upon the premises.

We do not think it was error for the court to permit the testimony given in rebuttal by appellee and James. They were reintroduced to contradict McGarvey, a witness for appellee, who, on cross-examination, and apparently to appellee's surprise, had testified that he gave appellee warning of the danger of going to the car at the time of the accident. As his statement in respect of the warning was brought out by appellant's counsel, McGarvey as to that matter was its witness. A party, by introducing a witness who gives evidence against him, is not concluded by such evidence. He may call other witnesses to prove that the facts are otherwise than as stated. (Civil Code Prac., sec. 596.)

We are, however, of opinion that the lower court erred in instructing the jury that they might allow appellee punitive damages. The evidence found in the record fails to show on the part of appellant, or in the conduct of its servants, any of the elements of wrong-doing that would justify the infliction of punishment in the shape of exemplary damages. It is well settled that the question of whether there is any evidence in a given case to justify the assessment by the jury of exemplary damages is for the determination of the court. (Lexington Ry. Co. v. Fain, 80 S. W., 463,

25 Ky. Law Rep., 2243; McHenry Coal Co. v. Snedden, 98 Ky., 686, 17 Ky. Law Rep., 1261, 34 S. W., 228; Sedgwick on damages, sec. 387.) Under the facts of this case, the recovery, if any, should have been confined by the court to compensatory damages; that is, such a sum in damages as, according to the evidence, will fairly and reasonably compensate appellee for the mental and physical suffering, if any of either, the necessary and reasonable expense in the way of medical bills he incurred, if any, and for the permanent impairment, if any, of his ability to earn money that may have been caused by, and directly resulted from, the negligence of appellant complained of, the damages, altogether, not to exceed the amount claimed in the petition. Instruction No. 1, except in the matter of its allowing the finding of punitive damages, is, we think, substantially correct. It should, however, confine the jury to compensatory damages, defined as above indicated. Instruction No. 2, as to contributory negligence, is unobjectionable. The court should also give an instruction defining negligence and ordinary care.

For the reasons indicated, the judgment is reversed, and cause remanded for a new trial and for further proceedings consistent with the opinion.