## Robinson's Administrator v. Louisville & Nashville Railroad Company.

(Decided June 12, 1923.)

### Appeal from Gallatin Circuit Court.

1. Railroads—Company Held to Owe no Duty to Prevent Injury to Licensee by Derailment.—Conceding that railroad company leasing house which could only be reached by a spur track was bound to furnish tenant and his guests a way of ingress and egress, a guest using the spur track was only a licensee, to whom it owed no duty to maintain its other tracks and equipment, so as to prevent derailment.

2. Railroads—One Using Track in Doing Business with Company's Tenant Held Only a Licensee.—Though railroad company leasing house which could only be reached by its spur track knew tenant was selling papers to the public, where his patrons were not using the track in such numbers as to require trainmen to anticipate their presence, a patron using the track was only a licensee.

JOHN L. VEST for appellant.

B. D. WARFIELD, BECKHAM & HAMILTON and ROBERT B. BROWN for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

The petition substantially alleges the following facts: The right of way of the Louisville & Nashville Railroad Company in the town of Sparta runs east and west, and is intersected by a public highway; 350 feet west of this intersection the railway company has for more than fifteen years owned and maintained a house occupied by its section foreman and his family as a residence; it faces the railway tracks to the north; the company owns other property to the east and west, while that on the south is owned by a private individual, this lot being entirely in-

closed, the only passway in or out being upon the tracks of the company east to the public highway. There are four of these lines of track, the southernmost being a spur that begins at the highway and runs 300 feet west to a bumper; the company filled the spaces between these tracks with cinders level with the ties, extending the cinders in the space west of the spur, thereby making a path from it to the section house. The section foreman, with the knowledge of the company, had for many years been an agent of the Cincinnati Enquirer, and kept those papers for sale at his house (though it does not appear whether he delivered them at his house or at the homes of his patrons).

On the day of his death, plaintiff's intestate went to this house and purchased a paper and was returning on the spur; at the same time a freight train was passing him on the main track going in the same direction he was, when by the gross negligence of defendant's agents and servants, one of the cars jumped from the track and fell upon him, killing him instantly. From a judgment sustaining a demurrer and dismissing the petition plaintiff appeals.

The established doctrine as to trespassers upon or near the railway tracks is, that the company's agents owe them no duty unless they are in peril, nor until such peril is discovered. As to bare licensees the general doctrine seems to be that as regards *premises* and *equipment* the duty of the licensor is to abstain from wilfully and wantonly injuring them, or, as it is sometimes termed, is liable for *active* negligence only; Johnson v. Paducah Laundry Co., 122 Ky. 369; Indian Refining Co. v. Mobley, 134 Ky. 822; L. & N. R. R. Co. v. Hobbs, 155 Ky. 130; L. & N. R. R. Co. v. Marlow, 169 Ky. 140; L. & N. R. Co. v. Schnieder, 174 Ky. 730; Sage, Admr. v. Creech Coal Co., 194 Ky. 418; Rabe v. C. & O. R. R. Co., 190 Ky. 255; Jones v. I. C. R. R. Co., 31 Ky. L. R. 825; Southern Ry. Co. v. Clark, 32 Ky. Rep. 69; Brown's Admr. v. L. & N. R. R. Co., 97 Ky. 228; I. C. R. R. Co. v. Tyson's Admr., 32 Rep. 1390; L. & N. R. R. Co. v. Wade, 18 Rep, 549; I. C. R. Co. v. Pierce's Admr., 175 Ky. 488; Bales, Admr. v. L. & N. R. R. Co., 179 Ky. 207.

Formerly some distinction was drawn between active negligence and wilful or wanton injury, but in the Sage case, *supra,* they are explained as being practically synonymous.

In the application of this rule recovery has been denied in the case of a licensee who was struck by a piece of iron falling from a passing train. L. & N. v. Marlow, *supra;* to the complaint of the speed of a train by one walking along the tracks on Baxter Ave., in Louisville, Brown v. L. & N. R. R. Co., *supra;* and the same complaint by a licensee on side track who was sucked under the train, L. & N. R. R. Co. v. Lawson, 161 Ky. 39. Exceptions to this rule may be found where the injured party is on the premises of the company by invitation, express or implied, either on business with the company or as a passenger or employe. L. & N. v. Schnieder; Same v. Hobbs; Same v. Marlow, *supra.*

Also, the rule has no reference to the duties of the enginemen at places where the tracks are habitually used by such large numbers of pedestrians as to require the trainmen to anticipate their presence. But no claim of that character is here made. Indeed, the appellant's counsel frankly concedes that no such condition exists, and with equal frankness admits that if the intestate was a trespasser or a bare licensee that it was proper to sustain the demurrer. His contention is that it was the duty of appellee as the landlord to furnish a means of ingress and egress to the leased premises, and as the only one furnished was over its tracks this was an invitation to the tenant, his family and guests to use them; and that while so doing such persons were not bare licensees but invitees, present as a matter of right, and as such entitled to the same protection and the same degree of care from the trainmen as are travelers on the public highway at railway intersections.

He further argues that as the tenant had kept papers for sale at his home for years, and as appellee knew he was selling same, this was an implied invitation to customers to travel over these tracks, and in support of his position cites the case of McDermitt v. N. Y. Cen. & H. R. Co., 28 Hun. 325.

In that case the company had built and rented some houses that could be reached in no other way except by going upon the railway tracks. Deceased boarded with one of its tenants. In going out he was run over and killed by a backing engine operated without signals. In a suit for damages the company undertook to defend on the theory that the passway should have been at a particular place and that deceased at the time was a trespasser. The court said:

"That the lessor of property owes to its lessee a right of way for ingress and egress to and from the property hired, would seem to be too clear to admit of any doubt. . . . Of the legal rights of the occupants of the dwelling the defendant is presumed to have been informed, and therefore it knew that at the point where the injury occurred there was liable to be a human being. Without any elaboration, it seems to be clear that the defendant does owe to human beings who it knows have a right to be upon its tracks when it is operating its trains, the duty of a reasonable care."

We have been cited to no Kentucky case that is directly in point, but appellee claims that the case of the C. N. O. & T. P. Ry. Co. v. Brown, 192 Ky. 724, is of controlling force. In that case Brown, an employe, made a trip after working hours and was injured while returning at night to a camp car in which he was boarding, and which, while on a side track, could be reached in different ways. There was a reference in the opinion to the duty the company owed to the occupants of section houses scattered along its right of way and not accessible except over or along its tracks. But this was entirely by way of illustration, and besides it did not refer to premises such as these, in which the railway tracks are the only means of ingress and egress, but to such as were not otherwise accessible except over or *along* the railroad tracks. Hence, it is not in that respect authority in this case. But if it should be conceded that the company was required to furnish its tenant with a way of ingress and egress, and thus permitted him, his family and guests to travel the spur, would that require the company to maintain its other tracks and all of its equipment with reference to such use of this spur track, or would its duty to those traveling thereon consist in using ordinary care in the operation of its trains to avoid injury to them while so using it? This question seems to have been answered in the case of Sage v. Creech Coal Co., 194 Ky. 418, in which a distinction was also drawn between an invitee and a bare licensee.

It there appeared that the defendant owned all the houses and land in the mining camp; that the trestle was used daily, habitually and constantly by large numbers of children in going to and from school, as well as adults, and this was with the knowledge, consent, permission, and license of the company. The deceased was going to

school walking the trestle. A wire cable from the drum head broke and struck deceased, killing him instantly. In reference to his status the court said:

"That he was not an invitee as that term is ordinarily employed is clear, since he was on defendant's premises for purposes of his own and not for any purpose connected with the company's business or beneficial to it. He was therefore either a trespasser or a licensee, and if the latter he was a bare licensee, since under the facts alleged it is patent he did not have an irrevocable license or interest in the walkway."

Again:

"As we have already pointed out, the defendant was not required to maintain its way or appliances in a safe condition for decedent's use of the way regardless of whether he was a licensee or a trespasser, and the unsafe condition of the cable was not wanton, wilful or any other kind of negligence (unless passive) as to him, even if he was a licensee. To hold otherwise would mean that a licensor would be duty bound to maintain the way and his adjacent premises and appliances in a reasonably safe condition for the licensee's use, which is certainly not the law in this state, as was held under very similar circumstances in L. & N. R. R. Co. v. Marlow, *supra,* where a licensee walking along a path beside a railroad track was struck by a piece of iron pipe which was attached at one end of the engine and other flew out and struck him. It was held that he was not held to recover in the absence of a showing that the iron was caused to fly from the path of the train by some 'affirmative or positive act' of negligence."

The principle laid down in that case is especially applicable to the facts of this. As a guest of the section foreman it could hardly be said that the intestate had a superior right to that possessed by Sage and under the reasoning of that case if Sage was a licensee the same conclusion must be reached as to the intestate.

While the petition alleged negligence in general terms, a close perusal clearly indicates that it refers to defective equipment, and as a recovery for this was denied in the Sage case and other cases cited therein, it would seem to be conclusive on this point.

Considering the contention that the company knew the section foreman was selling papers and thereby impliedly invited the intestate and other patrons on the premises, as it is admitted that the travel was not in such

numbers as to require the trainmen to anticipate their presence on the track, it would seem that this question would be controlled by the principle laid down in the cases of I. C. R. Co. v. Pierce's Admr., 175 Ky. 488, and the Indian Refining Co. v. Mobley, 134 Ky. 822.

In the former case the deceased, an employe, had asked for a trip pass. It was sent to an office that could not be reached except by traveling on the railroad tracks. He was informed of the arrival of the pass and went to the office for it, and on leaving went up the railway track and was run over and killed. It was held that, although he had a right to be upon the premises, he was there on his own business and not on that of the company, and that as a bare licensee he assumed the risk and the trainmen owed him no duty until his peril was discovered.

In the Mobley case, *supra*, deceased was injured by the negligent explosion of a steam boiler while at the plant of the refining company, soliciting insurance. He had received permission to do this and the court recognized that he was a licensee, but denied him a recovery.

As the deceased was engaged in his own private business exclusively, it would seem that these cases and others cited in those opinions are decisive of this question

Perceiving no error judgment is affirmed.