## Dennis' Administrator v. Kentucky & West Virginia Power Co.

(Decided Feb. 12, 1935.)

PRICHARD & HOLBROOK for appellant.

T. BRYSON for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

The administrator of Willie Dennis, deceased, instituted this action in the Boyd circuit court against the American Rolling Mill Company and the Kentucky & West Virginia Power Company, both corporations, seeking to recover damages for the death of the decedent alleged to have been caused by the negligence of the defendants.

In the original petition, after setting out the necessary jurisdictional facts, it was alleged that prior to, at the time, and since the accident complained of, the power company has maintained and operated high-tension power lines running from its plant at Kenova, W. Va., through Boyd, Greenup, and other counties in the state of Kentucky, one of which runs to its substation located near the property and plant of the American Rolling Mill Company in Boyd and Greenup counties; that high-voltage currents of electricity were, at all times, transmitted over its power lines; that the lines or copper wires through which the electricity was transmitted were strung and attached to steel frame towers about 30 by 30 feet at the base and tapering to the top and something over 60 feet in height. There are cross-arms extending out from the top of the towers, and the transmission lines are attached to insulators on these cross-arms. At one corner of the tower are attached steel spikes or projectors which serve as a ladder for ascending and descending. This ladder begins about 4½ feet from the ground and continues to the top of the tower. It is further alleged that at all times mentioned the American Rolling Mill Company was operating and managing an athletic field located on its land in Boyd county, where football, baseball, and other athletic contests were held; that this ground is equipped with grandstands and bleachers, and is completely inclosed with a metal fence approximately 9 or 10 feet high; that when not using this ground for its own purposes it would allow the Ashland High

School Athletic Association to hold athletic games thereon to which admission fees were charged; that one of these steel towers had been erected on the land owned by the American Rolling Mill Company adjacent to the football field and about 100 yards back of the grandstand; that the steel towers and transmission wires thereon had never been used as a means of transmitting electricity in the vicinity or locality referred to until introduced by the Kentucky & West Virginia Power Company, and the nature of the towers and the wires attached thereto and the great electrical force and the dangers incident thereto were not understood by the people of that locality and particularly by children and by people with lack of experience and knowledge of electricity; that by reason of the peculiar construction of the towers, the ease of access to all parts thereof, the apparent security of same and the apparent lack of danger in connection therewith, the towers constituted an attractve nuisance and constituted an invitation to the public, especially to children and people with lack of experience, to climb the tower at the time referred to in the petition; that, understanding these facts, defendants negligently and carelessly failed to use any means to prevent the use of the tower by children and other persons unaccustomed to and not acquainted with the danger, and negligently left the ladder easily accessible without warning sign of any character advising persons on or about the premises, or attracted by the towers, of the dangers incident to climbing or using same; that the high-tension wires on the towers were so heavily charged with electricity that it was unnecessary for a person to come in actual contact with the wires to be affected by the current, and that there were certain zones and distances from the wires within which it was dangerous for persons to come; that on November 5, 1932, the American Rolling Mill Company permitted the Ashland High School Athletic Association to hold a football game on its field, and great crowds of people were invited and permitted to congregate on the premises adjacent to the park; that a great number of persons, so invited and attracted to the game, did not enter the playing field, but remained outside the fence, climbing to points of vantage whereby they might see over the fence and into the field; that defendants knew that large crowds would be attracted to the premises and would attempt to

climb on any structure that would enable them to view the football game, and that the tower adjacent thereto was attractive and alluring to children and others who were constantly and frequently climbing and using same; that plaintiff's decedent, a boy 16 years of age, was attending the Ashland High School and was interested in its athletic activities; that on November 5, 1932, he went to the athletic field hereinbefore referred to for the purpose of seeing the game, but upon being refused admittance to the field without buying a ticket, and while rightfully on the premises, was attracted by the condition of the tower as offering a point of vantage from which to view the game, and without any notice or knowledge of the probable danger, and particularly of the danger zone, he ascended the tower for the purpose of seeing over the grandstand, and in order for him to do so it was necessary for him to climb almost to the top, and while there, and without touching or coming in direct contact with the wires, he received an electrical shock sufficient to cause his death and to cause him to fall to the ground, whereupon he died.

A demurrer to the petition having been sustained, plaintiff filed an amended petition alleging that the tower described in the petition and upon which the injuries to plaintiff's decedent occurred was located on the land owned by the Kentucky & West Virginia Power Company and which had been owned by it for a long time prior to the accident. He withdrew all allegations in conflict with the amended petition, and prayed for judgment against the Kentucky & West Virginia Power Company. A demurrer by the latter to the petition as amended having been sustained, and plaintiff declining to further plead, the petition was dismissed, and plaintiff is appealing.

While counsel for appellant manifestly attempt by the allegations of their petition to bring the case within the scope of the attractive nuisance doctrine, they have evidently abandoned that theory of the case, or at least do not seriously insist that it should be applied. It is asserted by counsel that apart from and independent of the doctrine of attractive nuisance as applied to children, the petition states a good cause of action based upon the ordinary rules of negligence.

It is contended (1) that if Willie Dennis should

be deemed a trespasser at the time he received the injuries resulting in his death, the petition states a good cause of action on the theory of "liability for artificial conditions, highly dangerous to constant trespassers upon a limited area"; and (2) that appellee, acquiescing in the habitual use of its tower by the public with knowledge that it was being habitually so used, was charged with a lookout duty of warning those whom they permitted to so use the tower of the hidden danger zones outside of and around the wires which the average person would not know to exist; and that because defendant had knowledge of the danger, or the circumstances were such as to charge it with knowledge thereof, its indifference as to consequences, when by reasonable care it could have avoided them, constituted the actionable negligence.

It is so obvious that the attractive nuisance doctrine does not apply that little need be said concerning that feature of the case. While the petition does allege that the tower was so constructed as to be alluring and attractive to children, it is not alleged that it was these qualities in the thing that caused the Dennis boy to climb it. He was desirous of seeing the football game, and was utilizing the tower as a means to that end the same as he would have climbed a tree or any structure that would have served the same purpose.

In the case of Sage's Adm'r v. Creech Coal Co., 194 Ky. 415, 240 S. W. 42, 44, the administrator was seeking to recover for the death of a child who fell from a tramroad trestle. On appeal, the lower court's judgment sustaining a demurrer to and dismissing the petition was affirmed. It was insisted by counsel for the administrator that the attractive nuisance doctrine applied. This court held that it did not because there was no showing that children ever played upon the trestle and it was not a movable thing with which they could play, but that deceased simply used it as a walkway in exactly the same way as did men, women, and other children of the community, and (2) that because while unquestionably dangerous as a walkway for any one, it was not in any sense an attractive nuisance, and the petition disclosed that the decedent was not upon it because of any attractive features it possessed, but was merely using it for his own purpose as a walkway on his way to school.

In passing it may be noted that it was also held in the opinion that the child in using the trestle as a walkway on his way to school was not an invitee because the use of it was for no purpose beneficial to or connected with the business of the owner, but that where he, along with the public generally, used the trestle with the acquiescence of the company, he was a licensee.

In the case of the Columbus Mining Co. v. Napier's Adm'r, 239 S. W. 642, 40 S. W. (2d) 285, it was held that the attractive nuisance doctrine is not applicable to a child 15 years of age, the presumption being that a child of such age is out of the protected class, but that exception is made where on account of undeveloped mental condition the child is entitled to be classed with those for whose benefit the doctrine was created. See, also, Louisville & N. Ry. Co. v. Hutton, 220 Ky. 277, 295 S. W. 175, 53 A. L. R. 1328; Commonwealth v. Henderson's Guardian, 245 Ky. 328, 53 S. W. (2d) 694. In view of the fact that Willie Dennis was 16 years of age, and in the absence of any allegation that he was of subnormal mentality, the presumption that he was out of the protected class must necessarily prevail.

Coming to a consideration of other grounds relied on by appellant, we find the parties in agreement as to the degree of care required of those dealing in electricity. In Kentucky Utilities Co. v. Woodrum's Adm'r, 224 Ky. 33, 5 S. W. (2d) 283, 286, 57 A. L. R. 1054, it is said:

"It has been often held by this court that one who is engaged in dealing in electricity must exercise the highest degree of care and skill known in the operation of its business to prevent injury to persons at any place where they have a right to be for either business or pleasure."

In brief for appellee it is said in effect that before the unfortunate injury to the Dennis boy, appellee had no knowledge, actual or constructive, that any person other than its employees had ever climbed its towers for any purpose whatsoever; and in addition that appellee had placed large signs on the towers warning persons of the high voltage and to keep away. But in determining the sufficiency of the petition we must be guided by the allegations thereof which on demurrer are admitted as true.

Notwithstanding the high degree of care required of those dealing in electricity, courts in this and other jurisdictions have uniformly held that they are not insurers of the safety of others. Numerous opinions have referred to the fact that electricity is a. dangerous and deadly agency whose presence cannot ordinarily be detected by any of the senses except touch, and that warning of its presence by this sense often comes too late. However, it has come into a common use and is considered a necessity in modern life, and, notwithstanding it still holds many secrets even for scientists, people in even sparsely settled communities have come to know the consequences of coming in contact with it.

The parties are likewise in agreement that it is impractical, if not impossible, to insulate wires carrying heavy currents of electricity, and it has become a custom, and in some localities a requirement, that these wires be placed underground or strung at such a height above the ground that those going about in pursuit of business or pleasure will not come in contact with them. That appellee took the precaution and incurred the expense of erecting towers 60 feet or more in height on which to carry its electric wires would of itself seem sufficient to warn any person of ordinary intelligence and prudence of the danger incident to coming near these wires.

Young Dennis was not upon the tower by express invitation of appellee, nor was his use of it beneficial to or in any way connected with appellee's business. It is therefore manifest that he was not an invitee, but was either a trespasser or licensee, and which of these relationships he occupied is a matter of little importance in the circumstances so far as the duty of appellee was concerned. It is a well established and uniform rule in this jurisdiction that either a trespasser or licensee takes the premises as he finds, them and at his own risk, with no duty resting, upon the owner except to refrain from willfully or wantonly injuring him. Wall v. F. W. Woolworth Co., 209 Ky. 258, 272 S. W. 730; Bales v. L. & N. Ry. Co., 179 Ky. 207, 200 S. W. 471; Louisville & N. Ry. Co. v. Page, 203 Ky. 755, 263 S. W. 20; Commonwealth v. Henderson's Guardian, supra; Columbus Mining Co. v. Napier's Adm'r, supra. In the Creech Coal Case, the court, in distinguishing the re-

spective duties owed to a trespasser and licensee by the owner of the premises, said:

> "In both the owner of the premises is bound not to injure him willfully or wantonly, but in neither is the owner bound to maintain either his premises or his appliances in a safe condition for the user, and the age of the user does not change the rule except perhaps with reference to a licensee of much tenderer age than decedent. The licensee, like the trespasser, must take the premises as he finds them. About the only essential difference is that the owner need not anticipate the presence of the trespasser, but often must anticipate the presence of the licensee. This duty of anticipating the presence of the licensee does not, however, impose any affirmative duty upon the owner of providing him a safe place, and he may revoke the license at any time; but it does place upon him the negative duty, so long as he permits the license to continue, of not doing any positive act that suddenly increases the hazard to the licensee of exercising his license, without reasonable notice to him of the increased hazard."

The same condition existed when the Dennis boy climbed to the top of the tower as did when he first went upon appellee's premises, and the hazard was not suddenly or otherwise increased.

Counsel for appellant places great reliance on the case of McCoy v. Texas Power & Light Co. (Tex. Civ. App.) 229 S. W. 623 wherein it was held that the lower court erred in sustaining a demurrer to a petition which seems to have served for a model for the petition under consideration. In that case, it appears that the company had acquired a right of way over the lands of McCoy, and his young son, who climbed a tower similar in construction to those of appellee, was electrocuted. The lower court held, in effect, that, because the company had a right of way over the land, it, to all intents and purposes, was the owner of the land under the tower, and that appellant's son was thereby a trespasser. The court said:

> "This is the rule as to adults but not the rule to be applied to children of tender years. However, as to adults the rule is limited in its application

so as to not include those adults who are on another's land by express invitation of the owner.''

It was held that because of the youth of the boy the attractive nuisance doctrine applied and the petition stated a cause of action. Obviously, this case is not in point, since as already indicated the same rule applies to a normal boy 16 years of age as does to adults, and appellant's decedent was not upon the tower by express invitation of appellee. Measured by the standards definitely fixed by this court in the foregoing and many other cases, it is apparent that the petition fails to state a cause of action, and the court did not err in sustaining the demurrer thereto.

Judgment affirmed.